IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**MARC ANTONIO SANDOVAL-CARRASCO,**

      **Petitioner,**

v.                              **CIVIL ACTION NO. 1:07cv145**
                                       **(Judge Keeley)**

**JOE D. DRIVER,**

      **Respondent.**

## REPORT AND RECOMMENDATION

### I. BACKGROUND

On October 25, 2007, the *pro se* petitioner, Marc Antonio Sandoval-Carrasco, an inmate at the United States Penitentiary Hazelton in Bruceton Mills, West Virginia, filed an Application for Habeas Corpus Pursuant to 28 U.S.C. §2241, seeking an order from this Court directing the Bureau of Prisons ("BOP") to reinstate his outside visitor privileges, all good conduct time exceeding 40 days, and all non-vested good conduct time that he lost through two disciplinary hearings. By Order entered on December 6, 2007, the Court directed the respondent to show cause why the petitioner should not be granted. On January 8, 2008, the respondent filed a Motion to Dismiss or in the alternative Motion for Summary Judgment. On that same date, the Court issued a Roseboro Notice, to which the respondent has made no reply. This matter is pending before me for an initial review and Report and Recommendation pursuant to LR PL P 83.09.

### II. FACTS

On November 30, 2004, in the United States District Court for the Southern District of

California, the petitioner pleaded guilty to a three count information charging him with Improper Entry by an Alien pursuant to 18 U.S.C. § 1325. On March 14, 2005, he was sentenced to three consecutive sentences totally 54 months of imprisonment. See 3:04cr-02769-GT-1. He was committed to the custody of the BOP on April 1, 2005. (Doc. 10-2, p.5). He received jail credit from September 28, 2004, and his projected release date is February 12, 2009, via Good Conduct Time Release. (Doc. 10-2, pp. 6-7).

On January 31, 2007, an incident report was prepared by R. Poissonnier, SIS Tech, charging the petitioner with a violation of Prohibited Act Code 112,[1] Use of Any Narcotics, Marijuana, Drugs, or Related Paraphernalia Not Prescribed for the Individual by the Medical Staff. (Doc. 10-3, p.9). The report indicated that on December 20, 2006, the petitioner provided a urine sample for narcotics testing. The sample was labeled, and the chain of custody was signed by the petitioner. The sample was sent to the National Toxicology Laboratories ("Lab") for Narcotic Screening Testing. On January 16, 2007, the Lab faxed the results indicating the sample tested positive for Opiates, Morphine. The petitioner's medical records did not indicate any reason for the positive result for this narcotic. (Id.). A copy of the incident report was delivered to the petitioner on January 31, 2007 at 5:15 p.m. (Id).

The investigating officer, LT. Phelps advised the petitioner of his right to remain silent, and after acknowledging that he understood that right, the petitioner elected not to make a statement. (Doc. 10-3, p. 10).Lt. Phelps noted that the delay between receipt of the lab results and preparation

---

[1] 28 C.F.R. § 541.13 contains a list of prohibited acts and disciplinary scale. Table 3 of that section sets forth a list of Prohibited acts which are categorized as "Greatest Category," "High Category," "Moderate Category," and "Low Moderate Category." Prohibited Act 112 falls within the "Greatest Category" which are subject to the most severe sanctions.

2

of the incident report was caused by the fact that medical staff did not sign the memo indicating that no medications had been prescribed that would render the positive results until January 20, 2007. (Id.). Based on the staff member's statement in the incident report, Lt. Phelps found the report true as written and referred to matter to the Unit Disciplinary Committee ("UDC") for further disposition. (Id.). Given the severity of the charges, the UDC referred to matter to the Disciplinary Officer ("DHO").(Doc. 10-3, p.9 ).

The DHO hearing was held on March 1, 2007. The DHO found that the petitioner had committed the Prohibited Act Code 112, as charged. In reaching her decision, the DHO considered: (1) the written statement of the reporting officer, (2) the National Toxicology Chain of Custody for Drug Analysis; (3)the lab's report; (4) the memorandum indicating no medical reason for a positive result; and (5) the petitioner's admission at the hearing that the report was accurate. (Doc. 10-3, pp. 6-7 ). The DHO sanctioned the petitioner to forfeiture of 40 days Good Conduct Time; 60 days of disciplinary segregation, suspended pending 180 days clear conduct; 1 year loss of visiting privileges; 1 year loss of commissary privileges; and 1 year loss of telephone privileges. The DHO report was delivered to the petitioner on March 15, 2007. (Doc. 10-3, p. 8).

On April 5, 2007, a second incident report was prepared by R. Poissonnier, SIS Tech, charging the petitioner with another violation of Prohibited Act Code 112, Use of Any Narcotics, Marijuana, Drugs, or Related Paraphernalia Not Prescribed for the Individual by the Medical Staff. (Doc. 10-3, p.21 ). This report indicated that on March 11, 2007, the petitioner provided a urine sample for narcotics testing. The sample was labeled, and the chain of custody was signed by the petitioner. The sample was sent to the same Lab for Narcotic Screening Testing. On March 16, 2007, the Lab faxed the results indicating the sample tested positive for Opiates, Morphine and

Codeine. The petitioner's medical records did not indicate any reason for the positive result for this narcotic. (Id.). A copy of the incident report was delivered to the petitioner on April 5, 2007 at 11:00 a.m. (Id).

The investigating officer, LT. Benton, advised the petitioner of his right to remain silent, and after acknowledging that he understood that right, the petitioner made no comment. (Doc. 10-3, p. 22). Based on the staff member's statement in the incident report, Lt. Benton concluded that sufficient evidence had been provided to proceed with further disciplinary action. Therefore, the matter was referred to the UDC for action. (Id.). Because sanctions were unavailable at the UDC level to deter the petitioner's behavior, the UDC referred to matter to the Disciplinary Officer ("DHO"). (Doc. 10-3, p. 21).

The DHO hearing was held April 20, 2007. The DHO found that the petitioner had committed the Prohibited Act Code 112, as charged. In reaching her decision, the DHO considered: (1) the written statement of the reporting officer, (2) the National Toxicology Chain of Custody for Drug Analysis; (3)the lab's report; (4) the memorandum indicating no medical reason for a positive result; and (5) the petitioner's admission at the hearing that the report was accurate. (Doc. 10-3, pp. 18-19). To hold the petitioner accountable for his behavior, and to deter him from engaging in this type of negative behavior in the future, the DHO: (1) disallowed 40 days Good Conduct Time; (2) forfeited 40 days of the petitioner's non-vested Good Conduct Time; (3) ordered 30 days of Disciplinary Segregation; (4) restricted the petitioner's visiting privileges for 2 years, followed by 6 months of No-Contact Visiting only; and (5) executed the previous suspended sanction of 60 days Disciplinary Segregation because the petitioner failed to maintain 180 days clear conduct. (Doc. 10-3, p. 19). The DHO report was delivered to the petitioner on June 6, 2007. (Doc. 10-3, p. 20).

## III. CONTENTIONS OF THE PARTIES

The petitioner raises the following grounds in his Application for Habeas Corpus:

(1) The DHO refused to outline evidence to support her discretionary finding; and

(2) The BOP refused to file a timely response to his appeal.

The respondent argues that the petition should be dismissed because:

(1) The petitioner failed to exhaust his administrative remedies with respect to the second Incident Report;

(2) The petitioner fails to state a cognizable claim with respect to his allegations that the BOP failed to file a timely response to his appeals;

(3) The petitioner's disciplinary actions were supported by "some evidence;" and

(4) The DHO exercised discretion in applying sanctions in response to petitioner's misconduct.

## III. Standard of Review

### A. Motion to Dismiss

In ruling on a motion to dismiss the Court must accept as true all well-pleaded factual allegations. Walker v. True, 399 F.3d 315 (4th Cir. 2005). Furthermore, dismissal for failure to state a claim is properly granted where, assuming the facts alleged in the complaint to be true, and construing the allegations in the light most favorable to the plaintiff, it is clear, as a matter of law, that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984); Conley v. Gibson, 355 U.S. 41, 4506 (1957).

### B. Summary Judgment

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases. See Blackledge v. Allison, 431 U.S. 63, 80 91977). So too, has the Fourth

Circuit Court of Appeals. Maynard v. Dixon, 943 F.2d 407 (4th Cir. 1991). Pursuant to Rule 56c of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party. Miller v. Federal Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242-252 (1986). To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson, 477 U.S. at 248. It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Industrial Co. V. Zenith Radio Corp., 475 U.S. 574, 587-88 1986).

### IV. ANALYSIS

**A. Exhaustion of Administrative Remedies**

Federal prisoners are ordinarily required to exhaust their administrative remedies before petitioning for a writ of habeas corpus pursuant to § 2241. Bradshaw v. Carlson, 682 F.2d 1050,

6

1052 (3rd Cir. 1981) (*per curiam*); United States of America v. Mercado, 37 Fed. Appx. 698 4th Cir. 2002) (unpublished); United States v. Gabor, 905 F.2d 76, 78 n. 2 (5th Cir. 1990); Sanchez v. Miller, 792 F.2d 694, 699 (7th Cir. 1986) cert denied, 479 U.S. 1056 (1987).

The BOP has established procedures for appealing DHO actions in 28 C.F.R. § 514.91. The process follows the general Administrative Procedure set forth in 28 C.F.R. § 4542.10, et seq., with two exceptions. First, the prisoner does not have to attempt an informal resolution followed by a formal written complaint at the institutional level. Instead, an inmate's appeal of a decision of the DHO should be filed directly with the appropriate regional office. Second, in addition to the requirements of the general Administrative Remedy Procedure, "[t]he inmate should forward a copy of the DHO report or, if not available at the time of filing, should state in his appeal the date of the DHO hearing and the nature of the charges against the inmate." 28 C.F.R.§ 541.19. The inmate must file the regional appeal within 20 calendar days of receipt of the DHO report. See 28 C.F.R. §§ 542.14(a), 542.15(a). Once an appeal is filed, a response is to be made by the Regional Director within 30 calendar days. However, if the period for response is insufficient to make an appropriate decision, the time for response may be extended once by 30 days at the regional level, and staff shall inform the inmate of the extension in writing. 28 C.F.R. § 542.18. If the inmate is not satisfied with the results at the regional level, he may appeal the regional response to the Office of General Counsel in Washington, D.C. The inmate must file his appeal with General Counsel within 30 days of the date the Regional Director signed the response. 28 C.F.R. § 542.15(a). An administrative remedy request may be rejected at any level for failure to meet any of the procedural requirements. However, "[i]f the defect on which the rejection is based is correctable, the notice shall inform the inmate of a reasonable time extension within which to correct the defect and resubmit the Request

or Appeal." 28 C.F.R. § 542.17(b).

The respondent does not contest that the petitioner exhausted his administrative remedies with respect to January 2007 DHO hearing. However, he does alleges that the petitioner failed to fully exhaust his administrative remedies through the BOP's grievance process prior to bringing the instant petition with respect to the April 2007 DHO hearing. The record reflects that the petitioner filed an appeal of the April hearing with the regional office on June 28, 2007. (Doc. 10-2, p.3). That appeal was rejected because it did not include the DHO report he was appealing. (Id.). The petitioner was given 10 days in which to re-file his appeal. The petitioner did re-file on July 13, 2007. (Id.). The region responded to the petitioner's appeal on September 26, 2007, finding that the required disciplinary procedures were followed, the evidence supported the DHO's finding, and the sanctions were appropriate. This response was outside the sixty days time period allotted the regional office. (Doc. 10-2, p. 17). The petitioner did not file an appeal with the Central Office. (Doc. 10-2, p.3).

Although the petitioner raises the BOP's refusal to file a timely response to his appeal as a ground for granting his petition, it is more accurately characterized as a defense to his failure to exhaust his administrative remedies. However, when an inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be denial at that level. 28 C.F.R. § 542.18. Therefore, when he did not receive a timely reply from the regional office, the petitioner could have filed an appeal with the Office of General Counsel[2]. His failure to do, renders his administrative remedy with respect to the April DHO

---

[2]In fact, it is clear from the record that the petitioner was aware of this provision. During the course of exhausting his administrative remedies with respect to the March DHO hearing, the petitioner received notification from the Regional Office of this very provision. (Doc.. 10-2, p.

8

hearing unexhausted, and the Court could dismiss that portion of the petition. However, it is clear that even if he had exhausted his administrative remedies with respect to the April DHO hearing, that his petition fails to state a claim upon which relief can be granted and is due to be dismissed.

**B. Due Process**

The Due Process Clauses of the Fifth and Fourteenth Amendments provide that no State shall "deprive any person of life, liberty, or property without due process of law." U.S. Const. Amend. V and XIV, §1. A liberty interest is involved in the instant case as the petitioner was denied good time credit. See Young v. Kann, 926 F.2d 1396, 1399 (3rd Cir. 1991 (a federal prisoner "has a constitutionally protected liberty interest in good time credit").

In Wolff v. McDonnell, 418 U.S. 539 (1974), the United States Supreme Court addressed the due process that must be provided during a prison disciplinary proceeding. According to the Supreme Court, due process requires as follows:

(1) giving the prisoner written notice of the charges at least 24 hours before he appears for his disciplinary hearing;

(2) providing the prisoner a written statement by the fact finders as to the evidence relied on and reasons for the disciplinary action;

(3) allowing the prisoner to call witnesses and present documentary evidence in his defense, when permitting him to do so will not be an undue hazard to institutional safety or correctional goals;

(4) permitting the prisoner the aid of a fellow prisoner, or if that is forbidden, aid from

---

15). Thereafter, the petitioner filed an appeal with the Office of General Counsel and noted that "the BOP had defaulted on its own response time." (Doc. 10-2, p. 16).

staff or a competent inmate designated by staff, if the prisoner is illiterate or the complexity of the issue makes it unlikely that the prisoner will be able to collect and present the evidence necessary for an adequate comprehension of the case; and

(5)     providing impartial fact finders.

Id. at 564-571.   The information before the Court reveals that the petitioner was provided due process as contemplated by Wolff.

First, the petitioner received written notice of the charges at least 24 hours in advance of both DHO hearings.  More particularly, the petitioner received a copy of the first incident report on January 31, 2007 and the DHO hearing was on March 1, 2007, and received a copy of the second report on April 5, 2007, and the DHO hearing was conducted on April 20, 2007.

Second, the petitioner was provided a written statement by the DHO as to the evidence relied on and the reasons for the disciplinary action.  Both reports note that the specific evidence relied upon to support the finding that the petitioner violated Code 112 were:  (1) the written statement of the reporting officer, (2) the National Toxicology Chain of Custody for Drug Analysis; (3) the lab's report; (4) the memorandum indicating no medical reason for a positive result; and (5) the petitioner's admission at the hearing that the report was accurate.  In addition, the reports explain the reason for the disciplinary action.  More specifically, both reports state that

> "The action/behavior of any inmate to use any narcotic, marijuana, drugs, or related paraphernalia not prescribed for that individual by the medical staff, threatens the health, safety, and welfare of not only the inmate involved, but all other inmates and staff alike.  In the past, inmates under the influence of drugs have become violent toward other inmates, as well as staff, and this type of behavior cannot, and will not be tolerated....Hopefully these sanctions are sufficient to impress upon you the seriousness of your actions and deter future negative behavior of this sort....The sanction imposes involving the loss of visiting privileges was taken to enforce the standard of inmates being held responsible for their actions.  It is believed, and past evidence has supported,

that drug contraband is introduced into the inmate population through the
inmate visiting room. The DHO found that drugs and other contraband are
not given to inmates through authorized channels, and therefore, must be
introduced from outside elements such as inmate visitors.

(Doc. 10-3, pp. 7, 19).

Third, the petitioner was advised of his right to call witnesses and present documentary evidence. The petitioner did not identify any witnesses or evidence.

Fourth, the petitioner requested a staff representative for the first hearing and was assigned his requested representative and waived his right to a staff representative at the second hearing.

Finally, although the petitioner alleges there was no evidence presented to the DHO to support her discretionary decision to employ sanctions against the petition, there is no evidence the DHO was not an impartial fact finder. Based upon the record before the Court, the undersigned finds that the DHO report does not reveal any bias and that there is no justification for finding the DHO was biased.

Not only was the petitioner provided all the due process rights required by Wolff, the findings made by the DHO are sufficient to support the finding that the petitioner violated Prohibited Act Code 112, Use of any Narcotics, Marijuana, Drugs, or Related Paraphernalia Not Prescribed for the Individual by the Medical Staff. The Supreme Court held in Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 455 (1985) that "[t]he requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits." The Supreme Court further stated:

> This standard is met if "there was some evidence from which the conclusion of the
> administrative tribunal could be deduced...." Ascertaining whether this standard
> is satisfied does not require examination of the entire record, independent assessment
> of the credibility of the witnesses, or weighing of the evidence. Instead, the relevant
> question is whether there is any evidence in the record that could support the

conclusion reached by the disciplinary board.

In reaching her decision, the DHO considered the Incident Report and Investigation, the lab report, and the petitioner's admission that both reports were true. Clearly, there was "some evidence" to support a guilty finding in this case, and the DHO's decision must therefore stand.

**C. Loss of Visitation Privileges**

Due process itself does not give an inmate the right to unfettered visitation. Kentucky Department of Corrections v. Thompson, 490 U.S. 454, 460-61 (1989). A liberty interest in visitation arises only when the regulations governing visitation place substantive limits on official discretion, usually by employing explicitly mandatory language that mandates a particular outcome if particular substantive predicates are present. Id. at 462-63. "The test for whether a statutory or regulatory procedure creates a protectable liberty interest, then, hinges on the actual language used by the legislature or agency," Cain v. Lane, 857 F.2d 1139, 1144 (7th Cir. 1988). The language of the regulation will be said to have created an entitlement interest if an official's right to take action, here the revocation of visiting privileges, is limited by a set of criteria that are binding, exhaustive, and definitive. See Smith v. Shettle, 946 F.2d 1250, 1252 (th Cir. 1991). However, if the regulations do not limit official discretion, that is "they are not worded in such a way that an inmate could reasonably expect to enforce them against the prison officials," Kentucky Dept. Of Corrections, 490 U.S. at 465, then no liberty interest is created.

The regulations governing visits for federal inmates do not sufficiently limit official discretion to give rise to an entitlement interest. Indeed, fairly read, they authorize the sanction imposed on the petitioner. Under 28 C.F.R. § 540.40, a warden "may restrict inmate visiting when necessary to insure the security and good order of the institution." Furthermore, the DHO who heard

12

the petitioner's cases was specifically empowered to impose as a sanction both segregation and the loss of privileges for a specified time. See 28 C.F.R. §§ 541.13, Table 3, Table 4(1)(d) and (2)(g), and 541.18(b). Although suspension of a particular privilege "ordinarily" is to be imposed only in connection with an abuse of that privilege, that very loose limitation was observed here. The DHO revoked the petitioner's visiting privileges in this case on the premise that drugs are introduced from outside elements such as inmate visitors. Finally, 28 C.F.R. § 541.21 recognizes that staff may restrict visiting privileges of inmates in disciplinary segregation and 28 C.F.R. § 540.52 permits a denial of future visits "possible over an extended period of time," for an inmate who violates visiting guidelines. Therefore, rather than limiting official discretion to suspend visitation privileges, the regulations specifically authorize correctional officers to restrict inmate visits in a number of situations. Accordingly, given the general discretionary authority to restrict visiting privileges, the petitioner cannot argue that the regulations give him an entitlement interest protected by due process, and no further review of the DHO's decision to impose sanctions that included the loss of visitation privileges is warranted.

## V. RECOMMENDATION

Based on the foregoing, the undersigned recommends that the respondent's Motion to Dismiss (Doc. 6) be **GRANTED**, and the petitioner's §2241 petition be **DENIED and DISMISSED WITH PREJUDICE**.

Any party may file, within ten (10) days after being served with a copy of this Recommendation, with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable Irene M. Keeley, United States District Judge.

Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as reflected on the docket sheet. The Clerk of the Court is further directed to prove a copy to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic case Filing in the United States District Court for the Northern District of West Virginia.

DATED: April 24, 2008

      /s/ James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE